IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

JAMES CASADONA,                                CASE NUMBER:

Plaintiff,

v.

TRUSTEES OF I.B.E.W.
LOCAL 490 PENSION PLAN,

    Defendant.
_____/

## COMPLAINT

    James Casadona, Plaintiff, brings the present action against the Trustees of I.B.E.W. Local 490 Pension Plan for appropriate equitable relief and for personal liability for failure to furnish plan documents upon receipt of written request and states as follows:

## COUNT I

1. This is a civil action arising under the laws of the United States pursuant to 28 U.S.C. Sect. 1331 and 29 U.S.C. Sect. 1132(e)(1). Pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA," below), 29 U.S.C. Sect. 1132(a)(3), James Casadona ("Casadona") brings this action for appropriate equitable relief.

2. Casadona is a resident of Palm Beach County, Florida. Pursuant to 29 U.S.C. Sect. 1132(e), venue is proper in the United States District Court for the Southern District of Florida, where the breaches took place.

3. At all times material to the present action Casadona is a participant, as the term "participant" as defined at 29 U.S.C. Sect. 1002(7), in an "employee welfare benefit plan,"

1

as defined at 29 U.S.C. Sect. 1002(1) and was a member of IBEW Local 490 of the International Brotherhood of Electrical Workers.

4. At all times material to the present action the Trustees of IBEW Local 490 established and maintained a pension plan for the benefit of eligible members of Local 490 (the "Plan").

5. In order to achieve vesting status of his benefits upon reaching retirement age, Casadona inquired of the Plan's administrator what credits might be necessary to bridge a previous break-in-service and how long Casadona had remaining before reaching retirement age to complete achieving such credits.

6. On January 13, 2013 the Administrator of the Benefits Office ("KATHLEEN SMITH, ADMINISTRATOR / BENEFITS OFFICE") sent a letter signed "Kathy Sanborn" to "Rob Marcella" posing the following questions:

> "Can you look at this guys [sic!] pension screen for me. He was [sic!] 4.8 years of service and doesn't want to lose what he has in there. If he goes back to work now, will he still have 4.8 years? He had a break from 2006 thru [sic!] 2008 and only 39 hours in 2009."

7. On January 16, 2013 Rob Marcella of Bolton Partners Northeast, Inc. replied:

> "You are correct. Mr. Casadona had only 4 consecutive break years from 2006 to 2009 before returning to service in 2010. He would have needed to incur 5 consecutive break years to have lost his service.
>
> "He currently has 2 consecutive break years from 2011 to 2012. If he returns to work and earns an additional 0.2 years of vesting service before

2

> incurring his 5th consecutive break year he will become vested. If not, he will lose all his service."

8. On January 16, 2013 Kathy Smith Sanborn, Administrator, sent a letter addressed to "Jim Casadona" which read:

> "Dear Jim:
>
> "In response to your question regarding pension benefits, you currently have 4.8 years of benefit credits. You need 0.2 years of vesting service and you will be vested. You would need to incur 5 consecutive break years to lose your service if you are not vested. I have enclosed your pension screen showing as of May, 2010 you 2236.74 hours, so long as you return to work before 5 years from that date you will be ok.
>
> "If you have any other questions, please feel free to contact me."

9. The "IBEW LU 490 Benefits Page" reads:

> "Kathleen Sanborn is the Benefits Administrator. We are here to work for the membership. Please call our office anytime if you need assistance or have questions.
> . . . .
> "There are three benefit funds: Health & Welfare, Pension and Annuity. Contractors contribute monies to each fund on your behalf, for every hour worked. These monies are sent from the contractors that you work for along with a Monthly Report of members and hours worked, to the Local Union 490 Benefits Office. Upon receipt, all information from the reports is transferred to your file in the computer. This way, we have an ever-growing record of who you worked for, when, and how many hours were worked, and which benefits were paid in for you."

3

10. The Benefits Page continues with a brief description of the Pension Fund:

> "The Pension Fund is funded by signatory contractors who contribute $5.40 per hour for each hour worked by the member. The Pension Fund is a Defined Benefit Plan, which means that credit is given based on hours worked per year. 1200 hours (worked between June 1 and May 31) are required for one year of credited service. If you work less than 1200 hours, you will receive credit in tenths for each 120 hours worked. The current benefit rate is $106.00 per month for each year of credited service, i.e., 25 years of credited service x $106.00 = $2,650.00 per month at normal retirement age. Normal retirement age is 65 or with 85 total years (age plus years of service to equal 85). Vesting requires five years to be fully vested. The Pension Plan has no cash value except in case of death, which would then pay contributed monies to your beneficiary. The beneficiary can collect 50% of your pension for the rest of his/her life at what would have been your normal retirement age, of [sic!] if you elect a lump sum. This lump sum distribution election must be made before your death with both you and your spouse's signatures notarized.
> . . . .
> "I hope this summary is helpful in explaining the benefits available to you and the purpose of the different funds. We are here to answer your questions and help in any way we can. We look forward to meeting you. Best regards to you and your families.
> "Kathy (Smith) Sanborn, Benefits Administrator"

11. On November 13, 2017 Casadona sent a letter to the Trustees summarizing succinctly what had happened in the interim since January 16, 2013.  In it Casadona wrote that he would turn 65 on November 27, 2017.  His letter described the information he was given by the Ms. Sanborn and his acting to his detriment in reliance on that information as follows:

> "As of May 2010 I had 4.8 years of service and thought I needed .2 years or 240 hours additional to vest my pension. I moved to Florida and got a job in 2013 to get my remaining hours with Edlen Electric in Orlando, IBEW Local 606.  I called Kathy to make sure my hours were being applied and when she checked the computer, she informed me that the records showed that I had 5.2 Years vested and that the hours had been rounded up. I asked for proof so Kathy sent me a screen shot which showed 5.2 years vested. This proof is what I needed as I was planning my retirement. After knowing I had all the hours necessary to have my Pension Vested, I told Edlen Electric that my hours were satisfied and as a traveling brother of Local 490, to give my position to a local brother, as it was the right thing to do."

12. In the same letter Casadona described what happened two years later, after he left Edlen Electric and stopped working

> "August 8th 2017, I received a letter from Kathy that my Pension was no longer vested as there was an error in the computer program. This was very distressing news because I have planned on this retirement program to support my family. I would never have given up my retirement income or given up my position at Edlen Electric

5

>   after working 95 hours if I only needed 128
>   hours to vest my pension."

13. Casadona concluded his November 13, 2017 letter to the Trustees by noting that the computer error was no fault of his and asking that the Trustees honor his request for 5.0 Vested Pension. He noted also that he enclosed copies of the documents needed to support his request and that he had been an IBEW member since 1980.

14. On March 10, 2015 Kathleen Sanborn had emailed an attached the "Pension screen" to Casadona. The Pension screen indeed noted 5.2 years of vesting credit.

15. Some two years later, on August 8, 2017, nonetheless, Kathleen Sanborn sent a letter as Administrator addressed to "James Casadona" in Delray Beach, Florida, which read:

    > "Dear Jim:
    >
    > Upon reviewing your pension screen with our actuary, you did lose your credits because you were not vested. . . . I think part of the confusion arose from the fact that our computer program was rounding up instead of being accurate. It said you had 4.8 years of benefit credit (which is correct), but said you had 5.2 years of vesting credit due to a rounding issue. My computer guy is working on fixing this."

16. On December 1, 2017 Kathleen Sanborn notified Casadona of the Board of Trustees' decision denying Casadona's appeal at its November 16, 2017 meeting:

6

> "The Board based its decision on the fact that you do not have sufficient Vesting Service under the Plan to qualify for a pension benefit. . . . As a result of the five (5) consecutive Breaks in Service you incurred during the 2011-2015 Plan Years (and prior to becoming vested), your prior Service and Vesting Credits were permanently cancelled."

17. At all times material to this action the Administrator of the Plan had a fiduciary duty to provide accurate and complete information to Casadona about the Plan and his eligibility for benefits under the Plan. The Administator of the Plan knew that Casadona was working to restore a break-in-service by working for an IBEW contractor in Florida, in order to complete the requirements for vesting his benefits. She had invited members to call with any questions about their benefits and had initially inquired with an outside source in order to answer Casadona's questions about vesting his benefits under the Plan. She informed Casadona of those requirements. When Casadona again contacted the Administrator to confirm that his hours worked were being reported and recorded properly, she surprised him with the apparent good news that the computer actually showed that Casadona's Vesting Credits had surpassed the required number for vesting. Casadona had asked her about whether his hours had been rounded. The Administrator informed him that the computer screen showed Casadona was now vested. Casadona asked her for a copy of the computer screen shot to confirm that he was vested, which the

      Administrator then forwarded to him. The Administrator knew or should have known that Casadona's request for the computer screen shot meant that Casadona would also rely on the computer screen shot to confirm what the Administrator had told him, namely, that the Vesting Credits requirement had been fulfilled. The Administrator knew or should have known that Casadona would rely on the Administrator's representations. The Administrator breached her fiduciary duty as agent of the Trustees of the Pension Fund to provide Casadona accurate and complete information about his Plan benefits at a time when she knew that her failure to provide accurate and complete information to Casadona would be substantially likely to cause Casadona harm.

18. As a direct and proximate result of the Plan's breach of fiduciary duty, Casadona has been forced to retain an attorney to represent him in this action and is therefore in the Court's discretion entitled to an award of costs and attorney fees under 29 U.S.C. § 1132(g)(1).

19. Prior to the filing of the present action, Casadona satisfied all conditions precedent, including having exhausted any and all administrative remedies.

20. Casadona, therefore, is entitled to appropriate equitable relief under 29 U.S.C. § 1132(a)(3).

21. Pursuant, therefore, to 29 U.S.C. § 1132(a)(3), Casadona prays for appropriate equitable relief restoring to him to vested status with the number of Vesting Credits which the Administrator informed him he had earned in 2015.

22. Pursuant further to 29 U.S.C. § 1132(g)(1), Casadona also prays for an award of costs and reasonable attorney fees.

## COUNT II

23. Pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA," below), 29 U.S.C. Sect. 1132(a)(1)(A) and (c)(1), James Casadona ("Casadona") brings this action for a penalty for a failure to furnish plan documents upon written request.

24. On about April 28, 2018 by and through his undersigned counsel Casadona sent a written request for plan documents under 29 U.S.C. § 1024(b)(4). The letter further stated that ERISA may provide a penalty of up to $110 a day for a plan administrator's non-compliance with requests for plan documents under 29 U.S.C. § 1132(c)(1). The letter referenced not only all summary plan descriptions but also all instruments governing the operation of the plan.

25. On May 22, 2018 Casadona sent a second request, this one addressed to the Trustees specifically, noting that:

> "[t]he documents previously requested in writing by this office have still not yet been provided. Your attorney informed [this office] he is currently working on

9

>this. Please do not consider, however, if suit is required to be filed, that the delay in producing them would waive any claim for a per diem penalty otherwise to be imposed by the Court under 29 U.S.C. § 1132(c)(1).

26. Pursuant, therefore, to 29 U.S.C. § 1132(a)(1)(A) and 29 U.S.C. § 1132(c)(1), Casadona requests that the Court impose a penalty against the Defendants of up to $110 day for the failure to furnish plan documents upon written request any earlier than January 8, 2019.

27. Pursuant further to 29 U.S.C. § 1132(g)(1),Casadona also prays for an award of costs and reasonable attorney fees.

28. Pursuant further to 29 U.S.C. § 1132(h), copies of the present Complaint will are being served by certified mail upon the Secretary of Labor and the Secretary of the Treasury.

>PAUL M. SULLIVAN, JR., L.L.C.
>Counsel for Plaintiff
>4440 PGA Blvd., Suite 600
>Palm Beach Gardens, FL 33410
>Ph: (561) 689-7222
>Email: sullivanpaul01@gmail.com
>Email Court Filings Only: psulliv@bellsouth.net
>
>By:   *s/ Paul M. Sullivan, Jr.*
>          FL Bar Number: 223891